[L. A. No. 11319. In Bank.—August 27, 1929.]

In the Matter of the Suspension of M. O. GRAVES from the Practice of Law.

M. O. Graves, *in pro. per.*, for Petitioner.

John M. Bowen and A. W. Ashburn for Respondent.

THE COURT.—This proceeding was instituted to review the order of the Board of Governors of The State Bar of California recommending to this court the suspension of petitioner for a period of six months from the practice of

58

law in this state. A hearing in due form and upon legal notice of the charges preferred against petitioner was held before a local administrative committee of The State Bar, as provided by the State Bar Act (Stats. 1927, p. 38). This committee forwarded to the Bar Governors the evidence taken before it upon said hearing, together with the recommendation that the petitioner be disbarred from the practice of law and that his name be stricken from the roll of attorneys of this state. At a regular meeting of said Board of Governors held on the twenty-third day of November, 1928, upon the evidence submitted by said committee, and upon said recommendation, said Board of Governors made its order recommending the suspension of petitioner from the practice of law in this state for the period of six months.

■ The charges preferred against petitioner were as follows:

"That you caused to be filed an account as co-executor in an estate matter, in which account, you, said M. O. Graves, claimed full executor's fees for yourself and your co-executor, and also full fees allowed by law on account of the estate administrator to yourself, as attorney. The estate proceedings was entitled *The Estate of Stetson*, No. 78,805, on the records of the Superior Court of Los Angeles County.

"That you prepared the different accounts, and you knew at all times that an attorney could not charge a double fee as executor and attorney. That, after the account had been disallowed by the Court as attorney's fees, you nevertheless retained the item of $743.45 which Judge Reeve had disallowed, and you never advised your co-executor—from whom you had received the money—that said item had been disallowed, nor did you advise the residuary legatee of such fact.

"That you deliberately and knowingly collected such fee as an attorney prior to the time when the account was settled and the item disallowed, and that you nevertheless failed to heed the Order of the Court, and wilfully and deliberately retained the money which you knew did not belong to you, and made no effort to return said money to either the co-executor or the residuary legatee who was entitled to it.

"All of the above acts took place in the City of Los Angeles, County of Los Angeles, State of California."

A brief statement of the evidence in support of said charges shows that during the time mentioned herein the petitioner, M. O. Graves, was an attorney at law duly admitted to practice in all the courts of this state; that he prepared the last will and testament of Rebecca J. Stetson in which he and one Thomas McClement were named as executors thereof; that on the death of said testatrix petitioner acted as the attorney for the executors named in said will and as such filed said will for probate together with a petition for the appointment of himself and said McClement as executors; upon the admission of said will to probate and the granting of said petition, both petitioner and said McClement qualified as executors of said will and as one of said executors petitioner signed with his coexecutor the notice to creditors and the inventory in said estate; the final account in said estate was signed by both petitioner and McClement as executors of said will, each of whom verified said account. Said account and the petition for distribution purported to be and were the account and petition of both of said executors, and, as we have said before, it was prepared by petitioner acting as the attorney of said executors; in this account the executors charged said estate with the full executors' fees, $743.45, and also for full attorney's fees, in a like amount; said attorney's fees were designated in said account as having been paid to petitioner for his services as attorney in said estate. When this account and petition came on for hearing before Judge Sidney N. Reeve in the probate court of the county of Los Angeles petitioner was sworn as a witness for the purpose of giving evidence in support of said account and petition. He testified that his coexecutor, Mr. McClement, was unable to be present at said hearing and that he, petitioner, was familiar with all the facts set forth in the matter before the court. He then testified to the receipts and expenditures set forth in the account and that the same were correct. Judge Reeve called petitioner's attention to the two charges of $743.45 each, one for executors' and the other for attorney's fees. Petitioner then stated that Mr. McClement only had qualified as executor of said will, and that he, McClement, had attended to all the executor's duties while he, petitioner, had acted as attorney for said executor; that he had simply signed the account and had never qualified as executor. Judge Reeve then

examined the papers in the estate and found that these statements of petitioner were false. He informed petitioner of the result of his investigation of said papers, whereupon petitioner stated that he had forgotten that he ever qualified as executor of said will. Judge Reeve thereupon disallowed the item of $743.45, attorney's fees, and ordered distribution of the residue of the estate, including said sum of $743.45, to the residuary legatee under the will of said testatrix. The testimony of Mr. McClement showed that he paid to Mr. Graves said sum of $743.45 as his attorney's fees in the settlement of said estate. It is not clear from the evidence whether this payment was made before or after the settlement of the final account and the entry of the decree of distribution. This sum of $743.45 paid petitioner as attorney's fees was never repaid by him to his coexecutor nor has it ever been paid to said residuary legatee. It appears from the evidence practically without conflict that through petitioner's direction, if not by him personally, a copy of the final account was sent to said residuary legatee, and a settlement and final payment made upon the statements and allegations contained therein, and that no decree of distribution was ever sent to said residuary legatee, nor was any settlement made with said residuary legatee upon the basis of any decree of distribution. It further appears from the evidence that Mr. McClement, petitioner's coexecutor, never knew of the disallowance by Judge Reeve of the item of attorney's fees until the time of the hearing before the committee appointed to take the evidence upon this proceeding against the petitioner. Mr. McClement further testified that petitioner had never paid back to him, nor had he paid to the residuary legatee the amount received by petitioner as attorney's fees, and that "He (petitioner) kept it so far as I know."

Petitioner offers certain evidence in explanation of the facts as set forth herein and in extenuation of his conduct in accepting and retaining said attorney's fees. He testified that immediately after the hearing before Judge Reeve, at which the attorney's fees were disallowed, he endeavored to see Judge Reeve and explain the matter to him personally, but that Judge Reeve was at the time a very sick man, and died a short time thereafter. Just what was to be the nature of his interview with Judge Reeve

does not clearly appear from the evidence. It does appear, however, that Judge Reeve considered the matter to be exceedingly grave and serious, and that, on the day of the hearing, or soon thereafter, he wrote a lengthy communication to the Bar Association of Los Angeles County, in which he characterized petitioner's conduct on the hearing before him as most reprehensible, and calling upon the Bar Association to take action against petitioner. We are unable to perceive how an interview with Judge Reeve would have helped petitioner's situation, even if we assume the petitioner endeavored in good faith to secure such an interview.

The residuary legatee was the Monmouth College of Monmouth, Illinois. There appears a reference in the briefs to a letter received by petitioner from the president of said college in which the latter expressed a willingness on the part of said institution, in view of the fact that both petitioner and Mr. McClement did the work necessary in the administration of the estate and that they had been advisers of Mrs. Stetson in matters for which they had not been compensated, to waive any right the college had to money paid petitioner as attorney's fees in said estate. This letter was dated April 23, 1928, some months after the hearing before the committee of the Los Angeles Bar Association, at which practically all the facts herein were brought to light. It was written to petitioner evidently in answer to a letter written by petitioner to said college. Just what representations were made to the college that brought forth said letter from the president of said college we are not informed. The letter refers to the matter as "a technical error." Undoubtedly the information as to the nature of this "error" must have come from the petitioner himself. In view of the fact that the president of the college considered the matter as merely "a technical error" we can well understand his willingness to waive any right the college had to the money paid petitioner. We have grave doubts whether the college would have been so lenient with petitioner had it known the true facts of the case. as recited herein. But even if, with a knowledge of all facts, the officers of the college were willing to waive any rights the college had in the premises, that fact could not to any great extent militate in petitioner's favor. The fail-

ure to turn the money over to the college, the rightful owner thereof, is only one of the offenses of which the evidence shows the petitioner to be guilty. Before dismissing the subject of said letter we wish to say that the committee of the California Bar recommended the disbarment of petitioner, but the Board of Bar Governors, in consideration of all the evidence, including said letter no doubt, mitigated the penalty to be meted out to petitioner by recommending his suspension only. In our opinion the petitioner has been given all the benefit to which he may be entitled by reason of the willingness of the Monmouth College to waive its rights to the money illegally paid petitioner as attorney's fees.

The evidence upon the whole, in our opinion, amply justifies the recommendation of the Bar Governors that petitioner be suspended from the practice as an attorney at law for the period of six months. The evidence plainly shows that petitioner, both by his direct admissions before the committee and his conduct, while acting as a witness before Judge Reeve, was familiar with the law which would not permit him to receive attorney's fees in an estate wherein he was one of the duly appointed, qualified and acting executors. With this knowledge of the law, he included in the final account of said estate a charge both for full executors' fees and full attorney's fees for himself. This account he then caused his coexecutor to swear to and also swore to it himself, declaring under oath that it was true and correct. Upon his attention being called by Judge Reeve to this double charge, he evidently attempted to mislead the court by representing that he had never qualified as executor. Judge Reeve confronted him with the papers in the case, prepared by himself, many of them signed and sworn to by him, and all of them bearing unmistakable evidence that he had qualified and acted as one of the executors from the inception of settlement of said estate to the final papers filed therein. He then made the lame excuse that he had forgotten the fact that he had qualified as one of the executors, or that that fact had slipped his mind. It is difficult for us to perceive how this excuse could have been offered in good faith when the evidence shows that the very document he was then testifying in support of, the final account, only a few days before had

been prepared, signed and sworn to by the petitioner. The above facts, we think, establish without any serious doubt that petitioner knowingly and wilfully presented to the court an incorrect and false account and that for the purpose of inducing the court to approve the same, attempted to mislead and deceive the court by statements and representations which he must have known at the time he made them did not state the truth. In addition to the foregoing it appears without contradiction that the only settlement which the petitioner, as an executor of the will of said defendant, has ever made with the residuary legatee of said estate was made upon the false and untrue final account and not upon the final decree in said estate, with the result that petitioner had retained and up to the time when this matter was heard before the committee of The State Bar still retained the sum of $743.45 which, according to said final decree, legally belonged to said residuary legatee. We are satisfied that the evidence in this proceeding against petitioner before the Board of Bar Governors was ample to justify the conclusion reached by said board and fully warranted their recommendation as to the penalty which should be meted out to the petitioner by reason of the offenses committed by him. We therefore approve said recommendation, and hereby order that the petitioner herein, the said M. O. Graves, be and he is hereby suspended from the practice of law in this state for the period of six months from the date of the filing of this order.

Rehearing denied.